# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

O.G.M.,

        Petitioner,

    v.

JESSICA SAGE, *in her official capacity as Warden, FCI Lewisburg, et al.*,

        Respondents.

No. 4:26-CV-00780

(Chief Judge Brann)

## MEMORANDUM OPINION

### MAY 6, 2026

## I.    BACKGROUND

O.G.M.,[1] currently a detainee of the United States Department of Homeland Security, Immigration and Customs Enforcement ("ICE"), has filed this 28 U.S.C. § 2241 petition seeking his release from ICE custody.[2] O.G.M. is currently detained at the Federal Correctional Institution, Lewisburg located within the Middle District of Pennsylvania.[3]

---

[1]    O.G.M. has filed a motion to proceed under a pseudonym, Doc. 2, which the Government does not oppose. *See* Doc. 9. The motion will therefore be granted, and Respondents will be directed to substitute any filings that contain personal identifying information with documents that redact such information.

[2]    Doc. 1.

[3]    *Id.* at 2.

O.G.M., a citizen and native of the Bolivarian Republic of Venezuela, entered the United States of America in April of 2023.[4] He has resided in the United States since that time, and is married to a United States citizen.[5] In January of 2025, O.G.M. applied for Temporary Protective Status ("TPS") and, on April 27, 2025, his TPS application was approved, with validity running until October 2, 2026.[6]

Shortly after taking office, in early February 2025, then Secretary of Homeland Security Kristi Noem terminated TPS protection for Venezuelans.[7] On October 29, 2025, O.G.M. was directed to present himself for a case review; after arriving at the appointed time, O.G.M. was arrested by ICE, and has remained in ICE custody since that date.[8]

In March of 2026, O.G.M. filed this § 2241 petition seeking release from custody or a bond hearing on two separate grounds.[9] First, O.G.M. argues that he holds valid TPS and, accordingly, the Government is prohibited by law from detaining him.[10] Second, O.G.M. contends that, because he was detained inside of the United States, his detention is governed by 8 U.S.C. § 1226(a), and the Government is incorrect that 8 U.S.C. § 1225(b)—which provides for mandatory

---

[4]  *Id.* at 4.
[5]  *Id.*
[6]  *Id.* at 10.
[7]  *Id.* at 16-17.
[8]  *Id.* at 10-11.
[9]  *See* Doc. 1.
[10]  *Id.* at 15-19.

detention without a bond hearing—applies to him.[11] The failure to provide him with a bond hearing, O.G.M. argues, violates his due process rights.[12]

Respondents reply that O.G.M.'s TPS has been terminated and, because the court order directing restoration of that status has been stayed by the Supreme Court of the United States, O.G.M. is not protected the relevant TPS provisions.[13] They further contend that § 1225(b) applies to all individuals who are not inspected and lawfully admitted to the country, regardless of whether they manage to enter the country surreptitiously, and O.G.M. is therefore subject to mandatory detention without a bond hearing.[14] Moreover, Respondents assert that O.G.M.'s continued detention without a bond hearing does not violate his due process rights.[15]

O.G.M. has filed a reply brief, rendering this matter ripe for disposition.[16] For the reasons discussed below, the petition will be granted in part.

## II.   DISCUSSION

O.G.M. brings his claims pursuant to 28 U.S.C. § 2241, which provides, as relevant here, that it applies to any individual who "in custody for an act done or omitted in pursuance of an Act of Congress, or an order, process, judgment or decree of a court or judge of the United States."[17] As the Supreme Court of the United States

---

[11]   *Id.* at 20-31.
[12]   *Id.* at 31-32.
[13]   Doc. 9 at 28.
[14]   *Id.* at 29-57.
[15]   *Id.* at 57-61.
[16]   Doc. 13.
[17]   28 U.S.C. § 2241(c)(2).

3

has emphasized, when ICE detainees challenge "their confinement" pending removal, "their claims fall within the 'core' of the writ of habeas corpus and thus must be brought in" a 28 U.S.C. § 2241 petition.[18] O.G.M.'s claims are therefore properly brought in this petition.

The determination of whether O.G.M. is improperly detained requires an examination of two separate provisions in immigration law: 8 U.S.C. § 1225(b) and 8 U.S.C. § 1226(a). Section 1225(b) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained" pending removal hearings.[19] In contrast, 8 U.S.C. § 1226(a) states only that "an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." In accordance with that language, "[f]ederal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention."[20] These two provisions therefore provide for opposite outcomes: under § 1225(b) O.G.M. may not receive a bond hearing, but under § 1226(a) he must receive such a hearing. The Court therefore examines each statute to determine which applies to O.G.M.

---

[18]   *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025).
[19]   8 U.S.C. § 1225(b)(2)(A).
[20]   *Jennings v. Rodriguez*, 583 U.S. 281, 306 (2018).

Turning first to 8 U.S.C. § 1225, as the United States Court of Appeals for the Second Circuit recently observed, to trigger § 1225(b)(2)(A), an individual must be (1) an applicant for admission, (2) seeking admission, and (3) not clearly and beyond a doubt entitled to be admitted.[21] Consequently, "Section 1225(b)(2)(A) . . . applies only to a noncitizen who is both an 'applicant for admission' and who is 'seeking admission.'"[22]

Section 1225 defines "applicant for admission" as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters)."[23] While applicable federal law does not define "alien seeking admission," courts construe the plain language of "seeking admission" to describe "active and ongoing conduct, such as physically attempting to come into the United States at a border or port of entry."[24]

Courts have observed that such a "reading comports with the Supreme Court's finding in *Jennings v. Rodriguez*,"[25] wherein the Supreme Court "noted [that]

---

[21]  *Cunha v. Freden*, __ F.3d __, __, No. 25-3141-PR, 2026 WL 1146044, at *5 (2d Cir. Apr. 28, 2026)).

[22]  *Id.*

[23]  8 U.S.C. § 1225(a)(1).

[24]  *Ramirez-Montoya v. Rose*, No. 3:25-CV-02411, 2025 WL 3709045, at *4 (M.D. Pa. Dec. 22, 2025) (collecting cases).

[25]  *Id.*

5

§ 1225(b) applies primarily to aliens seeking entry into the United States."[26] That reading of "seeking admission" further "preserves a distinction between 'seeking admission' and the separate term 'applicant for admission,' ensuring that each phrase carries independent meaning."[27] In sum, a plain reading of § 1225(b) demonstrates that it applies to individuals who are attempting to enter the United States, not those already within the country.

With respect to § 1226, the Supreme Court has been explicit that "§ 1226 applies to aliens already present in the United States."[28] That Section "creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings" and "permit[ting] the Attorney General to release those aliens on bond."[29] Therefore, while § 1225 applies to individuals detained while entering or attempting to enter the country, § 1226 applies generally to those who are detained within the country.[30]

These definitions create dual tracks: if an individual is detained attempting to enter the country illegally or while otherwise presenting themselves for inspection and entry, they are subject to mandatory detention pursuant to § 1225. If they are

---

[26]  *Jennings*, 583 U.S. at 297.
[27]  *Ramirez-Montoya*, 2025 WL 3709045, at *4.
[28]  *Jennings*, 583 U.S. at 303.
[29]  *Id.*
[30]  *See Cunha*, __ F.3d at __, 2026 WL 1146044 at *5-6 ("Section 1226(a) plainly applies to noncitizens, like Petitioner, who are present in the United States, but charged as inadmissible for entering the country without inspection and admission" while "Section 1225(b)(2) . . . applies only to (1) noncitizens who are present and have not been admitted, and (2) are requesting (3) lawful entry into the United States after inspection and authorization").

arrested after having already entered the country, they are subject to detention under § 1226 and are entitled to a bond hearing.

Applying that distinction here, O.G.M. must be detained pursuant to § 1226 and is therefore entitled to a bond hearing. O.G.M. entered the United States in April of 2023 and, at that time, he could reasonably have been construed as seeking admission and therefore as an individual governed by § 1225.[31] However, he was not arrested and detained until October of 2025[32] after having resided "in the United States for an extended period of time"; accordingly he is no longer seeking admission and "§ 1226(a), not § 1225(b)(2)(A), applies to" O.G.M. during his detention.[33] Because § 1226(a) applies, mandatory detention is not warranted, and he must be provided with a bond hearing.[34]

Having determined that O.G.M. is being detained under the wrong section of immigration law and is improperly being denied a bond hearing, the Court must next determine whether Respondents' actions violate O.G.M.'s Fifth Amendment Due Process rights.[35]

---

[31]  Doc. 1 at 4.

[32]  *Id.* at 10-11.

[33]  *Ramirez-Montoya*, 2025 WL 3709045, at *5.

[34]  *See, e.g., Patel v. O'Neil*, No. 3:25-CV-2185, 2025 WL 3516865, at *5 (M.D. Pa. Dec. 8, 2025) (finding in similar circumstances that § 1226(a) applies).

[35]  O.G.M. brings claims under the Fifth Amendment and violations of the Immigration and Nationality Act ("INA"). Doc. 1 at 36-38. O.G.M. alleges that his detention violates his rights under § 1254a of the INA related to those who validly hold TPS. Doc. 1 at 36. Both parties agree that then Secretary Noem terminated TPS as to previously qualifying Venezuelans, and agree that, in a case filed in the United States District Court for the Northern District of California, that termination of TPS was twice found invalid and TPS was twice (once on a

The Fifth Amendment to the United States Constitution provides that no person shall "be deprived of life, liberty, or property without due process of law." That Amendment "applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent,"[36] and therefore individuals "facing removal are entitled to due process."[37]

This Court applies the balancing test developed in *Mathews v. Eldridge*[38] to determine whether the failure to provide O.G.M. with a bond hearing under § 1226(a) violates his due process rights.[39] Under that test, courts must consider

> three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such

---

motion for a preliminary injunction and once on a grant of summary judgment) ordered reinstated for certain individuals, which would include O.G.M. *Compare* Doc. 1 at 15-19, *with* Doc. 9 at 9-13. *See Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807 (N.D. Cal.), *aff'd*, 150 F.4th 1000 (9th Cir. 2025); *Nat'l TPS All. v. Noem*, 798 F. Supp. 3d 1108, 1153 (N.D. Cal. 2025), *aff'd*, 166 F.4th 739 (9th Cir. 2026). However, both of those orders were stayed by the Supreme Court pending resolution of appeals to the United States Court of Appeals for the Ninth Circuit and any potential petition for certiorari to the Supreme Court. *Noem v. Nat'l TPS All.*, 145 S. Ct. 2728, 2728-29 (2025); *Noem v. Nat'l TPS All.*, 146 S. Ct. 23, 23-24 (2025). Those stays remain in effect. The District Court later entered a declaratory judgment finding that termination of TPS for the relevant Venezuelans was unlawful. *Nat'l TPS All. v. Noem*, No. 25-CV-01766-EMC, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025). This creates a thorny question as to whether O.G.M. is entitled to release on the basis of his TPS; the declaratory judgment decision held that the termination of TPS was unlawful, but the Supreme Court has stayed any coercive effect of the holdings, meaning O.G.M. does not currently hold valid TPS. Given this, there is good reason to believe that O.G.M. is not entitled to release on the basis of his prior TPS. *See, e.g., Olivero Nava v. Warden Port Isabel Serv. Processing Ctr.*, No. 1:26-CV-230, 2026 WL 1018343, at *5-6 (S.D. Tex. Apr. 15, 2026). Nevertheless, because O.G.M. is entitled to relief on the ground that he has been improperly denied a bond hearing, the Court declines to wade into this weighty issue at this time.

[36] *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

[37] *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001).

[38] 424 U.S. 319, 335 (1976).

[39] *Cf. Sewak v. I.N.S.*, 900 F.2d 667, 674 (3d Cir. 1990) (applying that test to determine whether applicable deportation regulations were capable of protecting an individual's due process rights).

interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[40]

The first factor weighs heavily in favor of concluding that Petitioners' actions have deprived O.G.M. of his due process rights, as "[f]reedom from imprisonment— from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."[41] The second factor likewise favors O.G.M., since "he is presently and *erroneously* detained under the mandatory detention provisions of § 1225, without an opportunity for a bond hearing."[42]

Finally, as other courts have observed, the Government does have an interest in detaining noncitizens to ensure "'the appearance of aliens at future immigration proceedings' and 'prevent[] danger to the community.'"[43] These interests certainly justify detaining individuals in appropriate circumstances. But they cannot weigh in favor of Respondents when they are denying wholesale a bond hearing—the very purposes of which is to establish whether an individual "poses [a] flight risk [or a] danger to the community."[44] In balancing these three factors then, it is clear that

---

[40] *Mathews*, 424 U.S. at 335.
[41] *Zadvydas*, 533 U.S. at 690. *See also Patel*, 2025 WL 3516865, at *6; *Ramirez-Montoya*, 2025 WL 3709045, at *6.
[42] *Patel*, 2025 WL 3516865, at *6 (quoting *Bethancourt Soto v. Soto*, No. 25-CV-16200, 2025 WL 2976572, at *8 (D.N.J. Oct. 22, 2025)).
[43] *Soto*, 2025 WL 2976572, at *8 (quoting *Zadvydas*, 533 U.S. at 690).
[44] *Ramirez-Montoya*, 2025 WL 3709045, at *4 (internal quotation marks omitted).

O.G.M.'s continued detention without a bond hearing violates his due process rights. Consequently, the Court will grant his § 2241 petition.

## III.    CONCLUSION

For the foregoing reasons, the Court concludes that Respondents have violated O.G.M.'s due process rights by detaining him without a bond hearing. Accordingly, his petition will be granted, and the Government will be required to provide O.G.M. with a bond hearing or release him from custody.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

10