**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

O.G.M.,

Petitioner,

v.

JESSICA SAGE, *in her official capacity as Warden, FCI Lewisburg*, et al.,

Respondents.

No. 4:26-CV-00780

(Chief Judge Brann)

# MEMORANDUM OPINION

**AUGUST 21, 2026**

O.G.M. has been detained by the United States Department of Homeland Security, Immigration and Customs Enforcement since October 29, 2025.[1] Earlier this year, O.G.M. filed a petition for a writ of habeas corpus, asserting that his detention without a bond hearing violated his due process rights.[2] This Court granted that petition and directed the Government to provide O.G.M. with an individualized bond hearing at which he may present evidence.[3]

On May 13, 2026, and May 20, 2026,[4] an immigration judge ("IJ") held a bond hearing and denied bond for O.G.M.[5] O.G.M. now moves for this Court to

1 Doc. 1 at 10-11.
2 *See* Doc. 1.
3 Docs. 14, 15.
4 The bond hearing was initially delayed to permit O.G.M. to submit additional evidence to the immigration court. Doc. 20 at 9; Doc. 22 at 16; Doc. 22-1 at 2-4.
5 *See* Doc. 16-1; Doc. 22-1.

enforce its judgment. A review of the available evidence demonstrates to the Court that, regardless of whether it may have reached a different result if presented with this question on de novo review, the bond hearing was sufficient to satisfy the requirements of the United States Constitution. Consequently, the Court will deny O.G.M.'s motion.

## I. BACKGROUND

O.G.M., a citizen and native of the Bolivarian Republic of Venezuela, entered the United States of America in April of 2023; he has lived in the United States continuously since then, and was later granted Temporary Protective Status.[6] On October 29, 2025, O.G.M. was arrested and ICE initially refused him a bond hearing, asserting that he was subject to mandatory detention.[7]

In March of 2026, O.G.M. filed a 28 U.S.C. § 2241 petition asserting that he was entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a).[8] This Court agreed, holding that O.G.M. was being improperly detained under 8 U.S.C. § 1225(b) and that the denial of a bond hearing violated his due process rights.[9] Consequently, this Court ordered that the Government "provide O.G.M. with an individualized bond hearing at which he may present evidence."[10]

6 Doc. 1 at 4, 10.
7 *Id.* at 10-11.
8 *See* Doc. 1.
9 Docs. 14, 15.
10 Doc. 15 at 1.

In May of 2026, an IJ held two bond hearings and denied bond for O.G.M.[11] At those hearings, the IJ noted that he had reviewed the evidence submitted and considered "the entire record before [him], including the witness letters, the letter from the defense attorney, victim recantation letters," and had heard arguments from both O.G.M. and the Government.[12] Ultimately, however, the IJ concluded that O.G.M. failed to establish that he is not a danger, determined that no amount of bond could effectively mitigate the danger that O.G.M. posed, and denied bond.[13]

In reaching the conclusion that O.G.M. presents a danger that may not be mitigated by any form of bond, the IJ focused heavily on O.G.M.'s recently dismissed criminal charges.[14] The IJ noted that the incident underlying those charges occurred when O.G.M. "had stabbed the alleged victim in the back that was so severe, it had apparently caused a collapsed lung."[15] Although the criminal charges had been dismissed, the IJ gave this fact little weight since "it was due to the victim's not wanting to prosecute."[16] Finally, the IJ reasoned that O.G.M.'s explanation that the incident was self-defense did not withstand scrutiny, as O.G.M. exited the fight, went into a building to retrieve a knife, and then stabbed the other individual in the

---

11 Doc. 16-1; Doc. 22-1.
12 Doc. 22-1 at 14-15.
13 *Id.*
14 *Id.*
15 *Id.* at 14.
16 *Id.*

back while that individual was fighting with O.G.M.'s brother.[17] The IJ emphasized that, even if there were

> some aspect [of] self-defense, there is zero indication that the assailant had any weapon, and this court finds it extremely dangerous to, rather than calling the police or calling for help, and where it is two individuals against one, to go inside, grab a knife, and stab someone multiple times in the back to the extent that they suffer a collapsed lung, wherein the victim there . . . is lucky they didn't lose their life.[18]

On June 19, 2026, O.G.M. filed this motion to enforce the Court's judgment.[19] He asserts that the IJ failed to conduct an adequately individualized hearing, as the IJ purportedly relied upon a single mechanistic factor—the dismissed criminal charge against O.G.M.—and ignored other evidence that demonstrates O.G.M. is not dangerous.[20] O.G.M. also argues that the failure to record a portion of the May 13 hearing violates his due process rights, as an IJ is required to record a proceeding to permit judicial review of the decision.[21]

Third, O.G.M. contends that the IJ failed to hold an impartial bond hearing, as the IJ "has a pattern of denying bond to the majority of noncitizens who appear before him."[22] This all occurs, O.G.M. states, in the context of a presidential administration that has actively worked to deny bond to any immigration detainees

---

[17] *Id.*
[18] *Id.*
[19] Doc. 19.
[20] Doc. 20 at 12-16.
[21] *Id.* at 16-18.
[22] *Id.* at 18; *see id.* at 18-22.

and has pressured IJs to follow suit, meaning that immigration courts can no longer be trusted to hold impartial bond hearings.[23] Finally as related to the bond hearing, O.G.M. asserts that the IJ improperly failed to consider alternatives to detention.[24] O.G.M. additionally asserts that his continued detention is unlawful because he held valid TPS status prior to his arrest.[25]

Respondents contend that this Court lacks jurisdiction to consider O.G.M.'s motion and, in any event, the motion fails on its merits.[26] Respondents first argue that 8 U.S.C. § 1226(e) strips this Court of jurisdiction to review the IJ's bond hearing determination, and that O.G.M. failed to exhaust his administrative remedies, which further bars consideration of the motion.[27]

Second, they assert that O.G.M. received an individualized bond hearing in accordance with the Court's Order, as the IJ considered all evidence and heard their arguments, but determined that O.G.M. was a danger, and O.G.M. merely seeks to relitigate the merits of the bond hearing.[28] They further argue that the failure to record a portion of the bond hearing did not violate O.G.M.'s due process rights, as the bond hearing itself was adequate.[29]

---

[23] *Id.* at 18-22.
[24] *Id.* at 22-24.
[25] *Id.* at 24-25.
[26] Doc. 22.
[27] *Id.* at 5-10.
[28] *Id.* at 10-15.
[29] *Id.* 15-17.

O.G.M. has filed a reply brief, rendering this matter ripe for disposition.[30] For the reasons discussed below, the motion will be denied.

## II. DISCUSSION

### A. Jurisdiction

The Government first argues that this Court may not examine the IJ's bond determination pursuant to 8 U.S.C. § 1226(e).[31] That statute provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole."[32]

Despite that rather definitive language, the United States Court of Appeals for the Third Circuit has explicitly held that "[n]othing in 8 U.S.C. § 1226(e) prevents [courts] from deciding whether the immigration officials had statutory authority to impose mandatory detention" and that "Section 1226(e) does not limit habeas jurisdiction over constitutional claims or questions of law."[33] Stated differently, although courts "lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, [they] may review whether the bond hearing was fundamentally unfair."[34]

---

30 Doc. 23.

31 Doc. 22 at 5-7.

32 8 U.S.C. § 1126(e).

33 *Sylvain v. Att'y Gen. of U.S.*, 714 F.3d 150, 155 (3d Cir. 2013) (quoting *Singh v. Holder,* 638 F.3d 1196, 1202 (9th Cir. 2011)).

34 *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022).

And beyond a court's ability to examine the constitutional adequacy of a bond hearing, it is well established that a "court has the inherent power to enforce its own orders."[35] Courts therefore have "continuing jurisdiction to address alleged noncompliance with [a] conditional writ of habeas corpus."[36] O.G.M. challenges both the constitutional sufficiency of the bond hearing and maintains that the hearing failed to comply with the Court's Order granting his petition for a writ of habeas corpus.[37] Both arguments fall within exceptions to § 1226(e)'s bar on review of a bond determination, and that section therefore does not divest this Court of jurisdiction to consider O.G.M.'s motion.

The Government next argues that O.G.M. has failed to exhaust his administrative remedies related to the bond hearing, and consequently this Court should decline to review the motion.[38] As other courts have discussed, whether an individual must exhaust administrative remedies by appealing a denial of bond is an "area of unsettled law in the Third Circuit and in this District" and "there are several decisions in this district reaching conflicting conclusions about whether exhaustion is required."[39]

---

35 *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 194 (3d Cir. 2020).

36 *Gibbs v. Frank*, 500 F.3d 202, 205 (3d Cir. 2007) (citing *Phifer v. Warden,* 53 F.3d 859, 865 (7th Cir. 1995)).

37 *See* Doc. 19.

38 Doc. 22 at 7-10.

39 *Shonhai v. Lowe*, No. CV 3:24-229, 2026 WL 538865, at *10 (M.D. Pa. Feb. 26, 2026).

The Court need not determine whether exhaustion of administrative remedies is required because, even when exhaustion is necessary, courts will not enforce that requirements if exhaustion "would be futile, if the actions of the agency clearly and unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm."[40] As it relates to an appeal of the denial of bond, futility is apparent because "'it is not at all clear that the BIA could evaluate the legality of the IJ's bond determination in relation to [a district court's order]—the BIA has, for example, consistently refused to reach and decide constitutional questions.'"[41]

Assuming that O.G.M. was required to exhaust his administrative remedies, that requirement would be excused here, as exhaustion would be futile since the Board of Immigration Appeals likely would not take up the constitutional question. In any event, although the Court finds that the motion is without merit, it will nevertheless address the substance of this motion.

### B. Merits

Turning to the merits of O.G.M.'s motion, O.G.M. asserts that the bond hearing was deficient for four reasons. First, he contends that the IJ erred in relying on a single, mechanistic factor to deny bond.[42] Second, O.G.M. argues that the

40 *Id.* (quoting *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1988)).

41 *Id.* (quoting *Y.S.G. v. Andrews*, No. 25-cv-1884, 2025 WL 2979309, at *7 (E.D. Cal. Oct. 22, 2025)).

42 Doc. 20 at 12-16.

failure to record a portion of the bond hearing warrants release from custody.[43] Third, he argues that the bond hearing was partial, as the IJ routinely denies bond, and the Presidential Administration is pressuring IJs to deny bond.[44] Fourth, he maintains that the IJ failed to consider alternatives to detention.[45]

"Throughout all phases of deportation proceedings, petitioners must be afforded due process of law."[46] The Due Process Clause guarantees individuals "an opportunity to be heard at a meaningful time and in a meaningful manner."[47] "This guarantee comprises three key protections: (1) factfinding based on a record produced before the decisionmaker and disclosed to him or her; (2) the opportunity to make arguments on his or her own behalf; and (3) an individualized determination of his or her interests."[48] "In other words, petitioners must receive a full and fair hearing that allows them a reasonable opportunity to present evidence on their behalf."[49]

Importantly, for a bond hearing to adequately provide an individualized determination, any evidence relied upon by an IJ "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or

---

43 Id. at 16-18.
44 Id. at 18-22.
45 *Id.* at 22-24.
46 *Serrano-Alberto v. Att'y Gen. U.S.*, 859 F.3d 208, 213 (3d Cir. 2017).
47 *Id.* (internal quotation marks omitted).
48 *Id.* (brackets and internal quotation marks omitted).
49 *Id.* (internal quotation marks omitted).

harming the community."[50] This means that "[m]echanistic reliance on factors that are common to all § 1226([a]) detainees will not suffice."[51]

As an initial matter, the Court cannot conclude that the IJ erroneously held that O.G.M. bore the burden of proof. This Court held that O.G.M. was entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a),[52] and the law is clear that, in a bond hearing "under § 1226(a)[,] the burden remains on the detainee at all times."[53] The line of Third Circuit cases addressing the burden of proof for prolonged detention under 8 U.S.C. § 1226(c) is simply inapplicable here.[54] Consequently, the IJ properly placed the burden of proof on O.G.M.[55]

Turning then to O.G.M.'s first argument, he asserts that the IJ relied on a single, mechanistic factor to deny bond—O.G.M.'s past criminal charges—without considering the evidence that O.G.M. asserts he presented to demonstrate that he is not a danger.[56] O.G.M. asserts, and the record is clear, that he presented significant

50 *Santos v. Lowe*, No. 1:18-CV-1553, 2020 WL 4530728, at *3 (M.D. Pa. Aug. 6, 2020) (quoting *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020)).

51 *Id.* (quoting *Wilkins v. Doll*, No. 1:17-CV-2354, 2018 WL 3388032, at *2 (M.D. Pa. July 12, 2018).

52 Doc. 14 at 7.

53 *Borbot v. Warden Hudson Cnty. Corr. Facility*, 906 F.3d 274, 279 (3d Cir. 2018).

54 *See id.* To the extent that O.G.M.'s motion may be construed as arguing that his detention has become unconstitutionally prolonged, Doc. 20 at 27-28, such an argument does not relate to the underlying judgment in this matter, which was based only on O.G.M.'s detention under the wrong statutory authority without a bond hearing. Any argument related to prolonged detention therefore is not properly brought in this motion.

55 *See Modebadze v. Soto*, No. CV 26-1687 (MAS), 2026 WL 1067835, at *1 (D.N.J. Apr. 17, 2026) ("Because the burden of proof under section 1226(a) remains on aliens at all times . . . the immigration judge did not misapply the standard of proof by requiring Petitioner to show that he was not a flight risk at his bond hearing").

56 Doc. 20 at 12-16.

quantities of evidence to the IJ for consideration.[57] But the record is equally clear that the IJ "considered the entire record before" him before rejecting O.G.M.'s motion for bond.[58] To the extent that O.G.M. asserts the vast weight of the evidence supports the notion that he is not dangerous, it is well established that "this Court lacks the authority to 'reweigh the evidence' presented at the bond hearing."[59] Consequently, the weight of the evidence alone cannot compel a finding that the bond hearing was constitutionally infirm.

As to O.G.M.'s contention that the IJ relied on a single, mechanistic factor in denying bond, the Court disagrees. Rather, contrary to O.G.M.'s contention that the IJ relied solely on the "arrest by law enforcement,"[60] the IJ gave careful consideration to the incident that formed the basis of the underlying criminal charges and concluded that the incident's severity—a stabbing that hospitalized the alleged victim—along with O.G.M.'s conduct during the incident indicated dangerousness.[61] In particular, the IJ found it troubling that O.G.M. failed to call law enforcement or otherwise seek help during the fight but, instead, went into a

57 *Id.* at 7-8.
58 Doc. 22-1 at 14. *See id.* at 5-6, 8-9, 14-15.
59 *Collado Nunez v. Oddo*, No. 25-CV-143J, 2026 WL 1170973, at *9 (W.D. Pa. Apr. 30, 2026) (quoting *Ghanem v. Warden Essex Cnty. Corr. Facility*, No. 21-1908, 2022 WL 574624, at *2, 3 (3d Cir. Feb. 25, 2022)).
60 Doc. 20 at 13.
61 Doc. 22-1 at 14-15.

building, retrieved a knife, and then returned to stab the individual in the back several times.[62]

This is precisely the type of individual analysis that due process demands when rendering a bond determination. The IJ did not indicate that all individuals are inherently dangerous if they are charged with a particular crime. Rather, he determined that O.G.M. is dangerous based on the circumstances present during that specific, relatively recent incident. This is unlike other cases where IJs may have failed to assess a detainee's "danger to the community on a current basis" and instead determined that "presenting danger to the community at one point by committing crime . . . place[d] them forever beyond redemption."[63] Because the IJ made an individualized assessment that O.G.M. is dangerous based on the particular facts and circumstances surrounding his criminal arrest, reliance on that arrest to determine that O.G.M. is dangerous did not violate O.G.M.'s due process rights.[64]

As to O.G.M.'s second argument that the failure to record a portion of the bond hearing violated his due process rights,[65] the Third Circuit has held, in other contexts, that the Government is required to "make a record" of an immigration hearing to satisfy due process.[66] But, as the Third Circuit emphasized, that record

---

62 *Id.*

63 *Chi Thon Ngo v. I.N.S.*, 192 F.3d 390, 398 (3d Cir. 1999).

64 Regardless of whether O.G.M. is correct in his inference that the New York Police Department "did not believe him to pose a significant danger to the community," Doc. 20 at 14, the IJ considered him to be a danger, and that determination alone is what the Court must evaluate.

65 *Id.* at 16-18.

66 *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 12 F.4th 321, 335 (3d Cir. 2021).

need only be "'of sufficient completeness' for 'adequate and effective appellate review.'"[67]

Here, the record presented to this Court is sufficient to permit effective review of the constitutionality of the bond hearing. The missing portion of the proceeding, by O.G.M.'s own recounting, included counsel's arguments that: (1) O.G.M. possessed valid TPS; (2) was not a danger or flight risk; and (3) there were valid alternatives to detention.[68] But these were merely arguments to the immigration court, and do not impact this Court's understanding of the IJ's decision.

The record as presented to the Court included arguments from both parties as to the relevant issue that undergirded the IJ's decision—the incident that led to O.G.M.'s dismissed criminal charges.[69] And most importantly, the recorded portion of the hearing contained the entirety of the IJ's reasoning for concluding that O.G.M. is dangerous and that no amount of bond could mitigate that danger.[70] Accordingly, the failure to record one portion of the bond hearings does not demonstrate that O.G.M.'s due process rights were violated.

The Court further cannot accept O.G.M.'s third and fourth reasons for asserting that the bond hearing was deficient. As to O.G.M.'s discussion of the political pressure that surrounds IJs, O.G.M. cites several articles and court decisions

---

67 *Id.* (quoting *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971) (ellipsis omitted)).
68 Doc. 20 at 16.
69 Doc. 22-1 at 6-13.
70 *Id.* at 14-15.

that indicate rates of bail grants are down, and that political pressure may play a role in this decline.[71] However, there is no evidence in the record that such influence played a role in the bond decision issued in this matter. O.G.M. presents some evidence that this particular IJ denies bond at a higher rate than the average IJ[72] but, again, there is no evidence that O.G.M. was denied bond for any improper reason.

And while the discussions to which O.G.M. cites are suggestive that IJs as a whole are perhaps improperly denying bond to individuals who would otherwise be released from custody, there is a difference between what one suspects is occurring and what one knows to be occurring. Regardless of what may be occurring elsewhere, this Court must base its decisions on the facts of this case and the relevant law, and the facts do not permit the conclusion that the IJ here based his decision on anything other than the evidence presented at the bond hearing.

As to O.G.M.'s fourth argument, that the IJ did not consider alternatives to detention, the record permits the inference that the IJ considered—and rejected—alternatives to detention. The IJ determined that O.G.M. was a danger, and that "no amount of bond" could mitigate the danger that he posed.[73] This reasoning sufficiently indicates that the IJ considered alternatives to detention, but found that the danger presented by O.G.M. could only reasonably be mitigated by detention.

---

[71] Doc. 20 at 18-22.
[72] *See* Doc. 20-5.
[73] Doc. 22-1 at 14-15.

Finally, O.G.M. asks that this Court release him based on his TPS status.[74] However, as this Court observed when first addressing O.G.M.'s petition, although another district judge has granted declaratory judgment finding that TPS status remains valid for Venezuelans, there is no coercive effect to that decision, and the termination of TPS for Venezuelans remains valid.[75] Consequently, "a binding court decision does not exist that has set aside [the] 2025 termination of" TPS for Venezuelans, and release based upon O.G.M.'s prior status under that program is not appropriate.[76]

In sum, the record reflects that the IJ here conducted a proper bond hearing, gave individual consideration to O.G.M.'s circumstances, and appropriately denied bond after determining that O.G.M. is dangerous. It is not the place of this Court to reweigh the evidence or impose its views on the IJ's decision. Accordingly, that decision withstands constitutional scrutiny, and O.G.M.'s motion to enforce the judgment will be denied.

74 Doc. 20 at 24-25.
75 *O.G.M. v. Sage*, No. 4:26-CV-00780, 2026 WL 1242754, at *3 n.35 (M.D. Pa. May 6, 2026).
76 *Pokhrel v. Oddo*, No. 3:26CV01052, 2026 WL 1758206, at *11 (W.D. Pa. June 15, 2026).

## III. CONCLUSION

For the foregoing reasons, O.G.M.'s motion to enforce the judgment will be denied.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge